# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTONIO WANYA CRAWFORD,

Defendant-Appellant.

FOR PUBLICATION
June 26, 2018
9:05 a.m.

No. 330215
Muskegon Circuit Court
LC No. 14-065291-FC

ON REMAND

Before: MARKEY, P.J., and MURPHY and METER, JJ.

MURPHY, J.

Defendant was convicted by a jury of two counts of armed robbery, MCL 750.529, and sentenced to concurrent prison terms of 9½ to 32 years. Defendant appealed as of right, and this panel affirmed his convictions and sentences. *People v Crawford*, unpublished per curiam opinion of the Court of Appeals, issued May 16, 2017 (Docket No. 330215). In lieu of granting leave to appeal, our Supreme Court vacated solely that part of our judgment which held that other-acts evidence of a prior robbery was properly admitted to show intent. *People v Crawford*, 906 NW2d 789 (2018). The Supreme Court directed us to reconsider, under *People v Denson*, 500 Mich 385; 902 NW2d 306 (2017), "whether the other-acts evidence was relevant to show the necessary intent for armed robbery and not merely propensity for wrongdoing." *Crawford*, 906 NW2d 789. Leave to appeal was denied in all other respects. *Id.* We hold that evidence of the 2011 robbery served the proper purpose of showing "intent," MRE 404(b)(1), that it was logically relevant, MRE 401 and MRE 402, and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, MRE 403. See *Denson*, 500 Mich at 398, quoting *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993). Moreover, assuming error, it was harmless. MCL 769.26; *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). Accordingly, we once again affirm.

We begin our discussion with the pertinent testimony elicited by the prosecution at trial. Jaeden Kammers posted on his Facebook page that he had a video game for sale. Kammers and a friend, Daniel Ribon, later rode their bikes to Hackley Hospital because it had wireless Internet service and they wished to send a message about the game to a friend, Jainautica Watkins, who was attending a graduation party. From the hospital, a message was sent by Kammers, and Watkins responded using his cell phone, indicating that he was interested in purchasing the video

-1-

game. Watkins allowed defendant, who was also present at the graduation party, to use his cell phone to check Facebook. Defendant, using Watkins's cell phone, began communicating with Kammers. Defendant learned about the video game and the presence of Kammers at Hackley Hospital. He then left the graduation party, telling Watkins, "I'm gonna go get that game." Defendant went to the hospital, meeting Kammers and Ribon at that location. Defendant, who was unknown to both Kammers and Ribon, falsely identified himself, giving the name of a personal rival. Defendant indicated a desire to purchase the game but claimed that he first needed to break a couple of twenty dollar bills. He supposedly was unsuccessful in doing so at the hospital. Defendant next informed Kammers and Ribon that he could get change at his house, and the three of them biked to a house. Defendant did not go inside the home, and he engaged Kammers and Ribon in friendly conversation outside the house. Kammers and Ribon allowed defendant to examine the video game and their cell phones after defendant suggested the possibility of trading phones. With the game and phones in hand, defendant began walking toward the house, leading Kammers and Ribon to believe that he was going to get money inside. Defendant instead started to run away, and upon an attempt by Kammers and Ribon to stop him, defendant pointed a gun at the pair, asking whether they were "tryin' to do something."

On the day before the trial began, defendant, who had earlier told the police that he had an alibi, provided a new statement to the police, indicating that defendant had been at the graduation party on the day of the offense, that he left the party after about 30 minutes, that he walked to nearby Hackley Hospital to use a bathroom, that he inadvertently bumped into Kammers and Ribon at the hospital, with the two making a request to purchase drugs from defendant, and that defendant refused to sell them any drugs. Defendant further asserted that Kammers and Ribon then pulled out a video game and asked him whether he was interested in buying it, and that defendant looked at the game, but then returned it to them, declining to purchase the game because he did not have the required gaming system. Defendant additionally claimed that, upon request, he allowed Kammers and Ribon to look at defendant's cell phone, that they returned his phone to defendant, and that defendant then left. Defendant's statement effectively constituted a claim that he went to the hospital with innocent intent, lacking any plan or intent to rob Kammers and Ribon, and that he indeed did not rob them.

With respect to the other-acts evidence, the 2011 robbery committed by defendant entailed defendant walking behind the 15-year-old victim, suddenly attacking the teenager from the rear, physically assaulting him, and then stealing the victim's MP3 player and headphones. The prosecutor successfully argued in favor of the introduction of the other-acts evidence, maintaining, in part, that it was admissible to show intent and motive, especially in light of defendant's most recent statement that he had an innocent interaction with Kammers and Ribon at Hackley Hospital.

We review for an abuse of discretion a trial court's decision to admit evidence. *Denson*, 500 Mich at 396. "However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Id.* When a trial court admits evidence that is inadmissible as a matter of law, the court necessarily abuses its discretion. *Id.*

MCL 750.529, Michigan's armed robbery statute, sets forth the nature of the crime, providing, in pertinent part, as follows:

-2-

A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

As indicated in this statutory language, MCL 750.529 incorporates by reference MCL 750.530, which is the general robbery statute, and which provides:

(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

(2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

Armed robbery is a specific intent crime, requiring proof that the defendant intended to permanently deprive the owner of his or her property. *People v Harverson*, 291 Mich App 171, 177-178, 178 n 2; 804 NW2d 757 (2010); *People v Williams*, 288 Mich App 67, 72 n 3, 76; 792 NW2d 384 (2010), aff'd 491 Mich 164 (2011); *People v Lee*, 243 Mich App 163, 168; 622 NW2d 71 (2000); *People v Parker*, 230 Mich App 337, 344; 584 NW2d 336 (1998); *People v King*, 210 Mich App 425, 428; 534 NW2d 534 (1995); M Crim JI 18.1 (setting forth the elements of armed robbery and defining the "larceny" component as the "taking and movement of someone else's property or money with the intent to take it away from that person permanently"). Accordingly, the prosecutor in the instant case was required to establish beyond a reasonable doubt that defendant intended to permanently deprive the two victims of their property.

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, *intent*, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [Emphasis added.]

In *Denson*, our Supreme Court examined MRE 404(b) in the context of other-acts evidence that was admitted on the basis of similarity and for the purpose of rebutting the defendant's claims of self-defense and defense of others. The Court reviewed the test for admitting other-acts evidence under MRE 404(b), citing the *VanderVliet* factors. *Denson*, 500 Mich at 398. With respect to the first prong, the *Denson* Court stated:

Under the first prong of the *VanderVliet* test, the question is whether the prosecution has articulated a proper noncharacter purpose for admission of the other-acts evidence. The prosecution bears the burden of establishing that purpose. MRE 404(b) prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question. On the other hand, such other-acts evidence may be admissible whenever it is also relevant to a noncharacter purpose, such as one of the purposes specifically enumerated in MRE 404(b)(1).

\* \* \*

[W]e have warned that a common pitfall in MRE 404(b) cases is that trial courts tend to admit other-acts evidence merely because the proponent has articulated a permissible purpose. The "mechanical recitation" of a permissible purpose, without explaining how the evidence relates to the recited purpose, is insufficient to justify admission under MRE 404(b). It is incumbent on a trial court to vigilantly weed out character evidence that is disguised as something else. In other words, merely *reciting* a proper purpose does not actually demonstrate the *existence* of a proper purpose for the particular other-acts evidence at issue and does not automatically render the evidence admissible. Rather, in order to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court must closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test. [*Denson*, 500 Mich at 398-400 (citations, quotation marks, and alteration brackets omitted).]

The second prong of the *VanderVliet* test – logical relevance – implicates MRE 401 and MRE 402 and is the "touchstone" relative to the admissibility of other-acts evidence. *Denson*, 500 Mich at 400-401.[1] "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Id.* at 401. Concerning "materiality," it requires other-acts evidence to be related to a fact that is of consequence in the case, meaning that the fact sought to be proven must truly be at issue. *Id.* In relation to materiality, the *Denson* Court noted that the

---

[1] MRE 401 and MRE 402 provide, respectively, as follows:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. [MRE 401.]

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible. [MRE 402.]

prosecution has the burden to prove all of the elements of a charged crime beyond a reasonable doubt. *Id.* With respect to probative value, the Supreme Court explained:

> The prosecution must demonstrate the probative value of the other-acts evidence. . . . .
>
> Evidence is probative if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Generally, the threshold is minimal: any tendency is sufficient probative force. In the context of prior acts evidence, however, MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime. Thus, although the prosecution might claim a permissible purpose for the evidence under MRE 404(b), the prosecution must also *explain how* the evidence is relevant to that purpose without relying on a propensity inference. Ultimately, the court must determine whether the prosecution has established some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in the case. If not, the evidence is inadmissible.
>
> In evaluating whether the prosecution has provided an intermediate inference other than an impermissible character inference, we examine the similarity between a defendant's other act and the charged offense. In this case, we note that the prosecution sought to admit the other-acts evidence *particularly* based on the alleged similarities between the 2002 incident and the charged offense. The degree of similarity that is required between a defendant's other act and the charged offense depends on the manner in which the prosecution intends to use the other-acts evidence. [*Id.* at 401-403 (citations, quotation marks, ellipsis, and alteration brackets omitted).]

We note that "[w]hen other acts are offered to show *intent*, logical relevance dictates only that the charged crime and the proffered other acts are of the same general category." *VanderVliet*, 444 Mich at 79-80 (emphasis added; quotation marks omitted). "The level of similarity required when disproving innocent intent is less than when proving modus operandi." *Id.* at 80 n 36; see also *People v Mardlin*, 487 Mich 609, 622; 790 NW2d 607 (2010).

The third prong of the *VanderVliet* test provides that the probative value of the other-acts evidence cannot be substantially outweighed by the danger of unfair prejudice. *Denson*, 500 Mich at 398. The *Denson* Court did not find it necessary to construe and discuss this prong because it concluded that the other-acts evidence was inadmissible where it was not logically relevant to a permissible purpose. *Id.* at 409 n 13. The third prong simply requires the trial court to "employ the balancing process under [MRE] 403." *VanderVliet*, 444 Mich at 74-75. MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The fourth and final *VanderVliet* prong states that "the trial court, upon request, may provide a limiting instruction under [MRE] 105." *VanderVliet*, 444 Mich at 75; see also *Denson*, 500 Mich at 398.

Here, the evidence suggests that defendant's plan was to engage Kammers and Ribon in an unthreatening manner and with friendly banter, all as part of a ruse to have the unsuspecting pair lower their guards, which obviously occurred when Kammers and Ribon voluntarily handed the game and their cell phones to defendant. Indeed, Kammers and Ribon were not even concerned when defendant initially began to walk away from them with their property. Subterfuge and deception were revealed when defendant provided Kammers and Ribon with a false name at the hospital. Under these circumstances, we believe that the crime first began unfolding when defendant met Kammers and Ribon at Hackley Hospital. Thus, defendant's conduct and interactions with the victims associated with events at Hackley Hospital, placing Kammers and Ribon at ease and making them susceptible to robbery, can be viewed as occurring in the course of committing a larceny or during the commission of a larceny, even though the period was somewhat protracted. MCL 750.529; MCL 750.530.

Regardless, as indicated earlier, the prosecution was required to prove that defendant acted with the intent to permanently deprive Kammers and Ribon of their property, i.e., that defendant intended to rob them or steal from them. As part of attempting to satisfy that burden of proof, the prosecution was certainly entitled to present evidence showing that defendant had formed the requisite intent to steal as early as the graduation party when he was using Watkins's cell phone. Importantly, the prosecutor was not limited to proving intent solely by way of evidence pertaining to the immediate point in time when defendant walked off with the cell phones and video game.[2] The intent to commit a crime can be developed or exist long before an offense is actually committed. Thus, for example, if there is testimony that a perpetrator was overheard stating an intent to kill a particular person and that person was murdered a week later, the testimony can be used to establish an intent to kill in a murder prosecution, with the testimony being critical on the issue of intent despite the lapse of time between the perpetrator's statement and the killing. In the instant case, there was evidence that defendant told Watkins at the graduation party that he was leaving in order to "go get that game" and that defendant was just stringing Kammers and Ribon along while at the hospital, using a false identity. On the other hand, in defendant's statement given to police right before trial, defendant claimed that he went to the hospital simply to use a bathroom and coincidentally ran into Kammers and Ribon. Stated otherwise, defendant asserted a completely innocent intent in going to Hackley Hospital. In light of this conflicting evidence, we conclude, as to the first prong of the *VanderVliet* test, that admission of the other-acts evidence served the proper purpose of showing defendant's "intent," MRE 404(b)(1), even if it was developed earlier than when he and the victims were at the house.

---

[2] We note that $5 was also taken by defendant.

With respect to logical relevance, the second *VanderVliet* prong, the evidence of the 2011 robbery committed by defendant was material to a fact that was of consequence at trial, i.e., defendant's intent to permanently deprive the victims of their property, which is an element of the crime of armed robbery. *Denson*, 500 Mich at 401; *Harverson*, 291 Mich App at 177-178, 178 n 2. The second component of logical relevance – probative value – requires an assessment, in the context of this case, whether the 2011 robbery made it more probable than without the evidence that defendant acted with the necessary intent to steal. *Denson*, 500 Mich at 401-402. We conclude that the prosecutor established the proper intermediate inference of "intent" arising from the other-acts evidence, and not the improper inference of character or propensity to commit the crime. *Id.* at 402. As indicated earlier, the *Denson* Court explained that "[i]n evaluating whether the prosecution has provided an intermediate inference other than an impermissible character inference, we examine the similarity between a defendant's other act and the charged offense[,]" with the required degree of similarity being dependent "on the manner in which the prosecution intends to use the other-acts evidence." *Id.* at 402-403. And, as also mentioned above, "[w]hen other acts are offered to show *intent*, logical relevance dictates only that the charged crime and the proffered other acts are of the same general category." *VanderVliet*, 444 Mich at 79-80 (emphasis added; quotation marks omitted).

Both offenses involved the robbery of electronic devices or personal property associated with electronic devices; an MP3 player and headphones in the 2011 robbery and a video game and cell phones in the instant prosecution. Also, both crimes involved teenage victims. Although different in character, both robberies involved the element of surprise, with defendant suddenly and unexpectedly pouncing on the victim from behind in the 2011 robbery and, here, defendant lulling Kammers and Ribon into a false sense of security before suddenly and unexpectedly walking off with their property. We recognize that there are also differences between the two offenses, where the 2011 robbery entailed an actual physical assault and battery and the instant offense did not, and where a gun was displayed in the charged offense but not in connection with the 2011 robbery. That said, defendant used his cunning to avoid the need to physically assault and injure Kammers and Ribon, while still revealing an intent to employ violence if necessary when he flashed and pointed the gun at Kammers and Ribon. For purposes of establishing an intermediate inference of "intent," we rule that the two offenses were sufficiently similar. In sum, with regard to probative value, the other-acts evidence pertaining to the 2011 robbery made it more probable than without the evidence that defendant acted with the requisite intent to permanently deprive Kammers and Ribon of their property.

Finally, we conclude, under the balancing test set forth in MRE 403, i.e., the third *VanderVliet* factor, that the probative value of the 2011 robbery on the issue of intent was not substantially outweighed by the danger of unfair prejudice. MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). And "[e]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id.* "In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, a situation arises in which the danger of 'prejudice' exists." *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995) (citation and quotation marks omitted). "All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *Id.* at 75. Unfairness might arise when the other-acts evidence injects

considerations extraneous to the merits of a case, e.g., a jury's bias, shock, sympathy, or anger. *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005). "Unfairness might not exist where . . . the critical evidence supporting a party's position on a key issue raises the danger of prejudice within the meaning of MRE 403 . . . but the proponent of this evidence has no less prejudicial means by which the substance of this evidence can be admitted." *Mills*, 450 Mich at 76 (citation and quotation marks omitted). "[T]he prosecution may offer all relevant evidence, subject to MRE 403, on every element [of an offense]," given that the elements of an "offense are always at issue." *Id.* at 71.

We conclude that the other-acts evidence had significant probative value with respect to the issue of proving defendant's intent. And even if the probative value was not that great, it cannot be said that the probative value was *substantially* outweighed by the danger of *unfair* prejudice. We cannot find that the other-acts evidence injected considerations of jury bias, shock, or anger, or that it was given undue or preemptive weight by the jury.

In sum, the trial court did not abuse its discretion or otherwise err in admitting the other-acts evidence regarding the 2011 robbery. Moreover, as we indicated in the previous opinion, assuming error in the trial court's ruling, it was harmless. *Crawford*, unpub op at 6-7 n 3. Given that the testimony of the two victims was consistent, that defendant provided the police with conflicting accounts, having first claimed an alibi but then later acknowledging that he met with Kammers and Ribon, and that there was testimony that defendant confronted Kammers after the crime and essentially forced him to deny on camera defendant's participation in the crime, all of which was untainted evidence, we hold that defendant has not shown that it is more probable than not that a different outcome would have resulted without the assumed evidentiary error; there was no miscarriage of justice. MCL 769.26; *Lukity*, 460 Mich at 495-496.

Affirmed.

/s/ William B. Murphy
/s/ Patrick M. Meter