*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 25, 2020

Plaintiff-Appellee,

v

No. 347852
Wayne Circuit Court
LC No. 18-005325-01-FH

ABDOUL AZIZ-OUSMANE MAIGA,

Defendant-Appellant.

Before: SHAPIRO, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (force or coercion), and assault and battery, MCL 750.81(1). He was sentenced to three years' probation. For the reasons set forth in this opinion, we affirm.

The charges against defendant were based on allegations of unwanted sexual contact. The complainant was an assistant manager at the group home where defendant also worked. Complainant lived in a condominium located at the workplace. On the night of the incident, she and defendant were working the midnight shift. According to complainant's testimony, the following occurred. At approximately 3:30 a.m., defendant knocked on the door of her residence. She believed defendant came to her residence to retrieve supplies from the pantry. Defendant went toward the pantry and then called complainant over to the video monitors of the clients' rooms. When complainant did not notice anything concerning, she asked defendant why he requested that she look at the video monitors. Not mentioning the monitors, defendant replied that he had initially thought complainant was a bad person, told her that a former coworker had accused him of sexual assault, and apologized for misjudging her. He then asked complainant for a hug. Complainant testified that when she stood up to respond to defendant's request for a hug, he locked his arms around her back, kissed her on the lips, stuck his hands down her pants, and squeezed her buttocks. Complainant said that she pushed defendant away from her, to which defendant responded, "oh my God, oh my God, I shouldn't have done that," and left the residence.

Complainant contacted a coworker, who eventually arrived at the group home. The coworker, Kristopher Brown, testified that complainant was visibly upset and looked like she had

-1-

been crying. Complainant also contacted the facility's manager, Douglas Davis, who testified that complainant was very distraught when he arrived at the group home. Complainant then reported the incident to the Livonia Police Department. The responding officer, Jeffrey Geldhof, testified that complainant was very upset and crying when he arrived. Detective Daniel Sullivan later interviewed defendant, learned of the name and location of defendant's former employer, which was a private residential center that cared for mentally disabled and paraplegic residents. Detective Sullivan subsequently learned that a former coworker at that facility had accused defendant of sexual assault.

The former coworker, KG, testified at trial pursuant to MRE 404(b).[1] KG recounted two instances of defendant engaging in nonconsensual touching with her. She first testified that in 2015, while working at this other facility, defendant followed her downstairs to the laundry room. She said that defendant, unexpectedly, and without consent, kissed her and rubbed her vagina over her clothes. KG told defendant not to touch her, defendant apologized, and she cautioned defendant to not let it happen again. The second incident KG testified to occurred about a year later in 2016. She explained that while she was preparing breakfast, defendant was helping a paraplegic resident. According to KG, defendant closed the resident's bathroom door, approached her from behind, and began "dry humping" her, i.e., thrusting his genitals on her buttocks while their clothes were on. KG reported the incident to her supervisor at the private residential center, as well as the Garden City Police Department, but criminal charges were not initiated.

Defendant's sole argument on appeal is that the trial court erred in admitting the MRE 404(b) evidence. We conclude that the trial court did not abuse its discretion in allowing evidence of the 2015 incident involving KG, but that the 2016 incident was not sufficiently similar to the charged conduct to show a scheme, plan, or system of doing an act. We further conclude, however, that reversal is not required because we are not convinced that the testimony regarding the second incident was likely outcome-determinative.[2]

Other-acts evidence is governed by MRE 404(b), which states in part:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or

---

[1] About a month before trial, the prosecution filed a notice of intent to introduce evidence of defendant's other acts under MRE 404(b). Defendant replied with a motion to preclude the introduction of other-acts evidence under MRE 404(b). The trial court granted the prosecution's MRE 404(b) motion before trial.

[2] A trial court's admission of other-acts evidence is reviewed for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 609; 709 NW2d 595 (2005). An abuse of discretion occurs when a "decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). A trial court's nonconstitutional evidentiary error is only grounds for reversal when it was, more probable than not, outcome-determinative. *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014).

absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence is admissible if the following circumstances are met:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

It is clear that, in general,[3] other-acts evidence may never be admitted to show a defendant's character, i.e., that he was the type of person who would commit a crime of the type charged. The claim or even suggestion that "he did it before so he likely did it again" is not a permissible basis to introduce prior acts evidence. See e.g., *People v Denson*, 500 Mich 385, 407-408; 902 NW2d 306 (2017) (concluding that the other-acts evidence was not admissible where "[it] created a chain of inferences dependent on the preliminary conclusion that defendant had violent tendencies and acted consistently with those tendencies in attacking [the complainant]."). However, when the evidence is relevant to another, proper purpose and it does not violate MRE 403, it may be admitted. For the most part, MRE 404(b) makes those purposes specific and narrow, e.g., proof of intent, proof of motive, lack of accident. The inclusion of a "scheme, plan, or system" in doing an act may be relevant to one of these specific matters. For example, a defense of accident will invite proofs of prior similar acts in order to show intent. Since all other-acts evidence, no matter how relevant, carries with it the prejudice as to character that MRE 404(b) seeks to limit, the court must still conduct the balancing test set out in MRE 403.

It appears that when MRE 404(b) was adopted, the inclusion of "scheme, plan, or system" as a proper purpose was more restrictive than it is now. In *People v Englelman*, 434 Mich 204; 453 NW2d 656 (1990), Justice BOYLE, writing for the Court, reversed the defendant's conviction because prior act evidence was improperly admitted under the rubric of "scheme, plan or system." Justice BOYLE observed that such a scheme must include both "the charged and uncharged crimes as stages in the plan's execution." *Id.* at 221 (quotation marks and citation omitted). And in reversing the conviction, she noted that "[t]he defendant in this case did not have a single plan which encompassed both of these acts, and it does not appear on this record that the acts were in different stages, of the same, comprehensive plan."[4] *Id.*

In *People v Sabin (After Remand)*, 463 Mich 43, 63-64; 614 NW2d 888 (2000), the Supreme Court considered this issue again and clarified its view, observing that "[l]ogical

---

[3] MCL 768.27a and 768.27b permit admission of prior acts regardless of MRE 404(b) in cases of child sexual abuse and domestic violence, respectively. Neither are applicable here.

[4] By contrast, evidence that the defendant stole a gun the day before a bank was robbed with that gun would constitute different stages of the same, comprehensive plan and would thus be admissible under *Engleman's* interpretation of MRE 404(b).

relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot." The Court further stated that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Id*. at 63-64, citing *People v Ewoldt*, 7 Cal 4th 380; 867 P2d 757 (1994). However, most recently, in *Denson*, 500 Mich at 403, the Supreme Court instructed that "[i]f the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the charged offense," it is not enough to show that the events were merely similar. In such a circumstance, as exists here, a "striking similarity" between the two acts is required for the other act to be admissible. *Id*. General similarity between the charged and uncharged acts does not establish a plan, scheme, or system used to commit the acts. 2 Wigmore, Evidence (Chadbourn rev), § 304, pp 249-250, explains:

> [W]here the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing intent. . . . The object here is not merely to negative an innocent intent at the time of the act charged, but to prove a preexisting design, system, plan, or scheme, directed forwards to the doing of that act. In the former case (of intent) the attempt is merely to negative the innocent state of mind at the time of the act charged; in the present case the effort is to establish a definite prior design or system which included the doing of the act charged as part of its consummation. In the former case, the result is to give a complexion to a conceded act, and ends with that; in the present case, the result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed.
>
> The added element, then, must be, not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations. [Emphasis removed.]

There is no question that KG's testimony describes an incident that is similar to the charged offense, but the question as defined by *Denson* is whether they were strikingly similar. We conclude that this is a close question. In both the crime charged and the 2015 incident defendant took measures to encounter a female manager at his workplace, in an isolated place where cameras were not present. Consistent with the instant case, KG testified that defendant then gave her an unwanted kiss and touched her in a sexual manner below the waist without her consent. And in each of the events, as described by complainant and KG, defendant immediately apologized for his behavior. Further, defendant had initiated friendly interactions with both complainant and KG some time before the unconsented touching. At the same time, however, there were several significant differences between the events. For instance, KG did not report being held in defendant's grip or being touched on her buttocks or underneath her clothing. In addition, defendant did not initiate contact with KG by asking for a hug. They also occurred at different locations at different times of day.

However, we conclude that given the multiple and specific similarities between the incidents, the 2015 other-acts evidence did not merely suggest that defendant was someone who engaged in criminal sexual conduct, but suggested a particular scheme or system in doing so.

While any one of the similarities taken alone would not be sufficient to justify a finding that the incidents were strikingly similar, the fact that there were *multiple and specific* similarities establish a degree of relevance and probative value well beyond evidence that merely suggests a propensity to engage in unwanted sexual contact. For these reasons, we conclude that whether KG should have been permitted to testify is a close question and that the trial court could have ruled either way without abusing its discretion. See *People v McGhee*, 268 Mich App 600, 607; 709 NW2d 595 (2005) ("A trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion.").

For similar reasons, we also conclude that the trial court did not abuse its discretion in not precluding admission of this evidence under MRE 403. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. Given that there were sufficient similarities showing that defendant acted pursuant to a common plan, scheme or system, KG's testimony regarding the 2015 alleged incident had significant probative value as to whether the charged offense occurred. The differences between the incidents are such, however, that the probative value is somewhat lessened while the potential prejudice remains unchanged. However, we generally defer to the trial court's weighing of those factors. See *McGhee*, 268 Mich App at 607 ("Whether other-acts evidence is more prejudicial than probative is best left to the contemporaneous assessment of the trial court."). Further, the trial court instructed the jury that if it believed KG's testimony,[5] then it could only consider it for the purpose of evaluating the credibility of complainant's testimony and not for any other purpose, such as concluding that defendant was a "bad person" or likely to commit crimes. This limiting instruction helped mitigate the danger of unfair prejudice. See *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014).

The question is not close, however, as to the 2016 incident. That incident was not strikingly similar to the charged conduct.[6] KG testified that in 2016 defendant approached her from behind

---

[5] In arguing that KG's testimony lacked probative value and was unfairly prejudicial, defendant asserts that KG's 2017 complaint to the Equal Employment Opportunity Commission was dismissed following an investigation. However, the EEOC decision not to issue a right to sue letter against KG's employer does not necessarily mean that it found her allegations against defendant not credible. Thus, even assuming that defendant accurately represents the EEOC's decision, it has no bearing on the MRE 403 analysis.

[6] We note that the trial court did not separately analyze the two prior incidents. In *People v Watkins*, 491 Mich 450, 493; 818 NW2d 296 (2012), the Supreme Court determined that the trial court "should have considered each act separately" in evaluating whether other-acts evidence admissible under MCL 768.27a was overly prejudicial. While that statute does not apply in this case, we see no reason why a trial court should be permitted to "lump[] all of the evidence together" when analyzing other-acts evidence under MRE 404(b) evidence. See *id*.

and began "dry humping" her without warning. In contrast to the charged conduct and the 2015 incident, the 2016 incident does not indicate that defendant was acting pursuant to a plan. Rather, it appears to have been an impulsive and opportunistic act that defendant committed while the resident he was assisting went to the bathroom. Further, the nature of the 2016 touching was dissimilar from the other incidents. As opposed to an unwanted touching with his hands below the complainant's waist simultaneous with an unwanted kiss, defendant thrusted himself at KG from behind. In sum, the 2016 incident and the instant case are similar only in the type of conduct and victim involved. However, the Supreme Court has indicated that those bare similarities are insufficient under *Denson*.[7] Considering the minimal similarities to the charged conduct, the 2016 incident does not show that defendant used a plan or scheme "to perpetrate separate but very similar crimes." *Sabin*, 463 Mich at 63. Accordingly, the 2016 incident was not relevant to a proper purpose, and the admission of KG's testimony regarding this event was an abuse of discretion.

That said, reversal is not required in this case. "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citation omitted). This case turned on the jury's assessment of complainant's credibility. Complainant testified consistently regarding the details of the assault. Her testimony that the assault occurred was supported by multiple witnesses who observed complainant to be visibly upset in the hours after the offense. KG's testimony about the 2015 incident of unwanted touching further supported complainant's testimony because the prior event was sufficiently similar enough to the conduct in this case to allow an inference that defendant used the same plan or scheme to commit the charged offense. At trial, the defense argued that complainant's testimony was inconsistent on matters ancillary to the assault. Primarily, the defense focused on complainant's decision to disclose the assault to coworkers before contacting

---

[7] In *People v Crawford*, 325 Mich App 14, 18; 923 NW2d 296 (2018), vacated in part 503 Mich 990 (2019), the defendant indicated a desire to purchase a video game from the victims, and also to trade phones. Once the defendant had the game and phones, he began walking away and the victims initially thought he was going to retrieve money for the purchase. Defendant then started running and when the victims followed, the defendant pointed a gun at them. *Id*. at 19. The other-acts evidence concerned a previous robbery committed by the defendant, "which entailed defendant walking behind the 15-year-old victim, suddenly attacking the teenager from the rear, physically assaulting him, and then stealing the victim's MP3 player and headphones." *Id*. at 20. This Court affirmed the trial court's decision to admit the evidence for purposes of intent, determining that there were sufficient similarities between the two crimes because they both involved the robbery of electronic devices and were committed against teenage victims. *Id*. at 28. In an order, the Supreme Court vacated the part of our opinion "holding that evidence of the 2011 robbery served the proper purpose of showing intent," citing MRE 404(b)(1) and *Denson*, 500 Mich 385. *Crawford*, 504 Mich 990.

the police.[8]  Because the alleged inconsistencies pertained to relatively minor matters, and considering the testimony supporting complainant's credibility, we conclude that the improper admission of the 2016 incident does not undermine the reliability of the verdict.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[8] On that matter, complainant explained that she decided to contact her coworkers first because she was "shocked and confused" and "just wanted somebody else in the house, because I had four guys that I was takin' care of."